Approved: _____
JANE Y. CHONG
Assistant United States Attorney

Before:  THE HONORABLE VALERIE FIGUEREDO          **23 MAG 1349**
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- v. -

KEITH ROBERT RUSSELL,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

Violations of
21 U.S.C. § 846

COUNTY OF OFFENSE:
MANHATTAN

SOUTHERN DISTRICT OF NEW YORK, ss.:

MICHAEL PEÑA, being duly sworn, deposes and says that he is a detective with the New York City Police Department ("NYPD") and a task force officer assigned to the New York Drug Enforcement Task Force ("NYDETF"), and charges as follows:

**COUNT ONE**
**(Narcotics Conspiracy)**

1. From at least in or about October 2022, up to and including on or about February 20, 2023, in the Southern District of New York and elsewhere, KEITH ROBERT RUSSELL, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree, together and with each other, to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that KEITH ROBERT RUSSELL, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that KEITH ROBERT RUSSELL, the defendant, conspired to distribute and possess with intent to distribute were (i) 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) a mixture or

substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section (b)(1)(C).

(Title 21, United States Code, Section 846.)

## THE INVESTIGATION

4. Since in or around October 2022, the New York Drug Enforcement Task Force has been investigating KEITH ROBERT RUSSELL, the defendant, who is a resident of Pennsylvania, for transporting pound-quantities of methamphetamine for distribution in midtown Manhattan.

5. Based on my review of service provider records for a cellphone assigned a particular phone number (the "Russell Phone"), I have learned that the Russell Phone is subscribed to the wife of KEITH ROBERT RUSSELL, the defendant, and is associated with their home address in Bushkill, Pennsylvania. Based on GPS location data for the Russell Phone, obtained pursuant to a judicially authorized warrant, and physical surveillance conducted by law enforcement agents using the GPS location data, I believe that RUSSELL, the defendant, is the user of the Russell Phone.

6. Based on my review of text messages exchanged between the Russell Phone and two undercover officers ("UC-1" and "UC-2") posing as prospective methamphetamine buyers, and my conversations with UC-1 and UC-2, I have learned that in or around October and November 2022, KEITH ROBERT RUSSELL, the defendant, communicated with UC-1 and UC-2 about arranging a narcotics transaction in Manhattan. Specifically:

   a. On or about October 19, 2022, UC-1 used a phone assigned a particular phone number (the "Buyer Phone") to contact the Russell Phone by text message on an encrypted mobile application (the "Encrypted Application").

   b. In the course of the ensuing text message conversation, RUSSELL stated, "Bro come wit 4,000 and I'll give you the benefit of the doubt… I'll do the 2 for 4,000." Based on my training and experience, and my conversations with UC-1, I believe that RUSSELL was offering to sell UC-1 two pounds of crystal methamphetamine for US $4,000, which is consistent with the current street price of crystal methamphetamine.

   c. The Buyer Phone and RUSSELL subsequently exchanged the following texts, in substance and in part:

   | | |
   |---|---|
   | RUSSELL: | Wut number you had in mind? Tell me that and I'll let you know straight up if I can do it. And how often you will need it. |
   | UC-1: | Like around 19 to 2 |
   | RUSSELL: | Look I'll do em for 2250 and if you come right back I'll lower it from there |

        Like I said this shit I got is A-1 Top of the line

  d. Based on my training and experience, I believe that, in this exchange, RUSSELL understood that UC-1 was asking for two pounds of methamphetamine at a price of approximately $1,900 to $2,000 per unit, and that RUSSELL countered with $2,250 per unit.

  e. Based on my training and experience, I believe that when RUSSELL stated, "this shit I got is A-1 Top of the line," RUSSELL was indicating that the narcotics he intended to supply were high-quality.

  f. UC-1 indicated that he was not yet able to complete the transaction, and RUSSELL responded "Ight no problem" and "Hit me whenever."

  g. Approximately two weeks later, on or about November 2, 2022, a second undercover officer, UC-2, used the Buyer Phone to text the Russell Phone again through the Encrypted Application. UC-2 indicated that UC-2 was usually in Manhattan and could meet to complete the transaction. RUSSELL responded, "When you gonna be ready exactly? And ya we can do it somewhere in midtown."

  h. UC-2 waited until the next day, November 3, 2022, to respond. The following exchange ensued, in substance and in part:

| | |
|---|---|
| UC-2: | My bad bro I was sleeping . . . . I need that by the end of this week. |
| RUSSELL: | You can't get it done today?? Cuz I might not be out here after today.. I might be out of town for a minute so try for today cuz I ain't makin no guarantee . . . ." |
| UC-2: | Let me hit you back up in a bit and I see if I can make it for today |

  7. Based on my training and experience, I believe that when RUSSELL asked, "You can't get it done today?" he was inquiring whether UC-2 could meet with him on November 3, 2022 to purchase the narcotics because RUSSELL would soon be leaving the New York City area ("Cuz I might not be out here after today.. I might be out of town for a minute so try for today."). UC-2 did not follow up with RUSSELL, and the transaction was not completed.

THE MOVEMENT AND STORAGE OF SUSPECTED NARCOTICS IN MANHATTAN

  8. Based on my review of GPS location data for the Russell Phone and records maintained by certain hotels in Manhattan, combined with physical surveillance by law enforcement agents, I have learned that since in or about November 2022, up to and including February 2023, KEITH ROBERT RUSSELL, the defendant, has traveled from Pennsylvania to Manhattan several times a week, and has frequently reserved hotel rooms in Manhattan. For example:

a.  On or about November 3, 2022, RUSSELL checked into a room at a hotel located on West 36th Street ("Hotel-1").

b.  On or about November 4, 2022, RUSSELL checked into a room at a second hotel also on West 36th Street ("Hotel-2").

c.  On or about December 21, 2022 and January 17, 2023, RUSSELL checked into rooms at a hotel located on Crosby Street ("Hotel-3").

d.  On or about January 24, 2023, RUSSELL checked into a room at a hotel located on 46th Street ("Hotel-4").

e.  On or about January 8, 2023, RUSSELL checked into a room at a hotel located on East 38th Street ("Hotel-5").

9.  Based on my review of GPS location data for the Russell Phone, combined with physical surveillance by law enforcement, I have also learned that KEITH ROBERT RUSSELL, the defendant, frequently uses cars and bags to move items between locations in Manhattan. For example:

a.  On or about November 17, 2022, based on GPS data showing that the Russell Phone was located near 11th Avenue and 48th Street in Manhattan, law enforcement agents tracked the Russell Phone to a residential apartment building located in the vicinity of Second Avenue and East 36th Street in Manhattan. There, law enforcement agents observed RUSSELL remove what appeared to be a fully packed brown backpack (the "Brown Backpack") from the vehicle he was driving, a 2014 white Mercedes Benz CLS550 ("Benz"). Based on my review of vehicle registration records, I learned that the Benz is registered to RUSSELL's wife.

b.  Law enforcement agents observed RUSSELL enter the building on Second Avenue with the Brown Backpack and then approximately 15 minutes later exit with the Brown Backpack, which no longer looked full.

c.  On or about January 3, 2023, based on GPS data showing that the Russell Phone was located near a storage facility on West 55th Street in Manhattan ("Storage Facility-1"), law enforcement officers identified RUSSELL and his wife standing next to a black 2018 Cadillac Escalade bearing a particular Pennsylvania license plate number (the "Escalade") that was parked outside Storage Facility-1. Based on my review of vehicle registration records, I learned that the Escalade is registered to RUSSELL. Based on my review of records maintained by Storage Facility-1, I know that RUSSELL rented a storage unit under his name starting on or about February 28, 2022.

d.  Law enforcement agents observed RUSSELL open the trunk of the Escalade and remove two bags, one green and one black, and take both bags inside Storage Facility-1. Less than five minutes later, law enforcement agents observed RUSSELL exit Storage Facility-1 with only the black bag, which RUSSELL placed inside the Escalade, and drive westbound on West 55th Street.

e. Based on my review of surveillance footage captured from a camera located inside a hallway of Storage Facility-1, I have learned that, on or about January 18, 2023, the RUSSELL removed multiple bags from Storage Faciliy-1.

## THE VEHICLE SEARCH

10. Based on GPS location data for the Escalade, obtained pursuant to a judicially authorized warrant, I have learned that on or about February 20, 2023, the Escalade traveled from Pennsylvania to Manhattan.

11. Based on the GPS location data, in combination with physical surveillance, law enforcement agents were able to identify the Escalade as it moved through Manhattan before it made any extended stops in Manhattan. On West 55th Street, law enforcement agents observed the Escalade switch lanes without signaling and conducted a traffic stop of the Escalade. Based on my personal observations during the traffic stop, and my conversations with other law enforcement officers, I know the following:

a. Upon approaching the Escalade, law enforcement agents observed RUSSELL in the driver's seat and his wife in the passenger seat. Law enforcement had RUSSELL exit the Escalade. When asked to produce identification, RUSSELL indicated that he did not have a driver's license.

b. Based on evidence indicating RUSSELL's involvement in transporting and distributing narcotics—including RUSSELL's text messages with UC-1 and UC-2 and RUSSELL's movements to, from, and within Manhattan since at least in or around October 2022—law enforcement agents requested and awaited the arrival of a narcotics-detection canine.

12. An officer (the "K9 Handler") who was the handler for the narcotics-detection canine to arrive on scene, named Drew,[1] walked Drew around the Escalade. Drew stopped next to the closed driver's side door and sat. The K9 Handler stated that Drew's behavior is consistent with a positive indication for narcotics odors, which suggested that narcotics or narcotics residue were inside the Escalade.

13. Based on the positive indication, law enforcement officers conducted a search of the Escalade and recovered from the back of the Escalade the following items:

a. The previously observed Brown Backpack, containing two small rubber-banded stacks of 100-dollar bills and additional assorted U.S. currency, totaling approximately $10,776;

---

[1] Based on information provided by the K9 Handler, I have learned that Drew was certified as a narcotics-detection canine after completing certification with the Municipal Police Training Council as part of a Police Narcotics Detection Canine Team. Drew was certified to detect the odors of cocaine, crack cocaine, methamphetamines, MDMA, heroin, and suboxones. Drew's certification expires on or about February 1, 2025. Drew has generally proven reliable in the field.

    b. A large blue and black backpack, containing six Ziplock bags of clear-colored crystals, which weighed a total of approximately six pounds and the appearance of which was consistent with that of crystal methamphetamine; and

    c. A second white and purple backpack, containing approximately 18 grams of a white rock substance.

  14. KEITH ROBERT RUSSELL, the defendant, was transported to the Drug Enforcement Administration office in Manhattan, where he was advised of his *Miranda* rights verbally and in writing. There, he signed a written waiver confirming that he understood his rights and was willing to answer questions. RUSSELL stated, among other things, the following in sum and substance:

    a. He had stored approximately 20 pounds of methamphetamine at Storage Facility-1 but had recently removed the drugs.

    b. The white rock substance in the white and purple backpack was fentanyl.

    c. His narcotics supplier was located in California.

  WHEREFORE, I respectfully request that KEITH ROBERT RUSSELL, the defendant, be imprisoned or bailed, as the case may be.

_____
MICHAEL PEÑA
Detective
New York City Police Department

Sworn to me through the transmission of
this Complaint by reliable electronic
means, this 21st day of February, 2023.

_____
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York